IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| MEDSPRING GROUP, INC., a Utah Corporation,<br><br>                    Plaintiff,<br><br><br>          vs.<br><br><br>ATLANTIC HEALTHCARE GROUP, INC., a Florida Corporation,<br><br>                    Defendant. | ORDER<br><br>AND<br><br>MEMORANDUM DECISION<br><br><br>Case No. 1:05 CV 115 |

MedSpring Group, Inc. and Atlantic Healthcare Group, Inc. entered into a distributorship

agreement allowing Atlantic to serve as a distributor for hemostatic gauze supplied by

MedSpring.  As the parties began to perform under the agreement, a conflict arose.  MedSpring

filed this suit and, a short time later, Atlantic filed suit in its home state of Florida.  Both parties

agree that consolidation of the two suits is advisable, but neither party is willing to abandon its

chosen forum.

This matter is now before the court on Atlantic's motion to either transfer this suit to

Florida or dismiss the action altogether.  Atlantic contends that the Florida suit should be given

primacy under the "first to file" rule, and that a transfer is therefore warranted.  Alternatively,

Atlantic argues that this court should dismiss MedSpring's suit because Utah cannot not

constitutionally assert personal jurisdiction over Atlantic.

After reviewing the pleadings and considering the argument offered at the hearing on this

matter, the court concludes that a transfer of this action to Florida is unwarranted and that Utah

can constitutionally exercise personal jurisdiction over Atlantic.  Therefore, Atlantic's motion is DENIED.[1]

## BACKGROUND

In resolving the present motion, the court has relied upon the declarations submitted by the parties.  See FDIC v. Oaklawn Apartments, 959 F.2d 170, 174 (10th Cir. 1992) (stating that a district court has discretion to ascertain facts by relying on declarations or by conducting an evidentiary hearing).  "When a motion to dismiss for lack of jurisdiction is decided on the basis of affidavits and other written materials, the plaintiff need only make a prima facie showing" that jurisdiction is proper.  Behagen v. Amateur Basketball Ass'n, 744 F.2d 731, 733 (10th Cir. 1984).  "If the parties present conflicting affidavits, all factual disputes must be resolved in the plaintiff's favor, and 'the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party.'"  Wenz v. Memery Crystal, 55 F.3d 1503, 1505 (10th Cir. 1995) (quoting FDIC, 959 F.2d at 174).  While it is true that factual discrepancies must be resolved in favor of MedSpring at this stage of the proceedings, the court notes that the parties are in substantial agreement concerning the facts material to resolving the present motion.

MedSpring is a Utah corporation that develops and distributes medical products, including hemostatic gauze.  (Decl. of Nate Knight in Opp'n to Pl.'s Mot. to Quash Service of Process, or Dismiss for Lack of Personal Jurisdiction or Transfer Venue to So. Dist. of Fla., ¶¶ 2-3 [hereinafter Knight Decl.].)  MedSpring has never maintained any facilities outside of Utah. (Id. ¶ 2.)

In May 2004, Nate Knight, an officer of MedSpring, received a telephone call from Peter

---

[1]In its motion, Atlantic also requested that this court quash service of process because MedSpring served a deficient summons.  The defect in service has since been cured and Atlantic has abandoned that request for relief.

2

Mendiola, an Atlantic employee, who told him that Atlantic would be interested in exploring the possibility of entering into a distributorship agreement with MedSpring.  (<u>Id.</u> ¶¶ 5-6.)  Mr. Mendiola stated in his declaration that he contacted MedSpring after he received a sample of MedSpring's hemostatic gauze as well as some limited information about its properties and proper use.  (Decl. of Peter Mendiola in Supp. of Def.'s Mot. to Dismiss for Lack of Personal Jurisdiction or, in the Alternative, to Transfer Venue to So. Dist. of Fla., ¶¶ 4-6 [hereinafter Mendiola Decl.]; <u>Id.</u>, Ex. B.)  The packaging in which the sample arrived bore the name Moab Medical Devices.  (<u>Id.</u> ¶ 5.)  MedSpring alleges that it did not send the sample or otherwise take any action to solicit this initial contact from Atlantic.  (Knight Decl. ¶ 5.)

MedSpring informed Mr. Mendiola that if Atlantic was interested in entering into a distributorship agreement, then a representative from Atlantic should travel to Utah to see MedSpring's operation firsthand.  (<u>Id.</u> ¶ 7.)  On May 24, 2004, Mr. Mendiola came to Utah to meet with MedSpring.  (<u>Id.</u> ¶ 8.)  Mr. Mendiola left Utah on May 26, 2004.  (<u>Id.</u> ¶ 29.)  Before Mr. Mendiola's arrival in Utah, the parties exchanged multiple telephone calls and MedSpring sent Atlantic a sample distributorship agreement.  (<u>Id.</u> ¶ 7; Mendiola Decl. ¶¶ 16-17, 20.)  According to Mr. Mendiola, Atlantic and MedSpring conducted negotiations before his visit to Utah and had, in fact, agreed upon the terms of the distributorship agreement before his arrival in Utah.  (Mendiola Decl. ¶¶ 20-23, 34.)  Mr. Mendiola states that he brought a copy of the distribution agreement, signed by Atlantic's president, with him to Utah.  (<u>Id.</u> ¶ 26.)  MedSpring alleges that no substantive negotiations took place until after Mr. Mendiola's visit to Utah.  (Knight Decl. ¶¶ 9-11.)

In fact, the record contains two copies of the distributorship agreement with identical terms but different signature dates.  (<u>Compare</u> Def.'s Reply in Supp. of Mot. to Quash Service of

Process, or Dismiss for Lack of Personal Jurisdiction, or Transfer Venue to So. Dist. of Fla., Ex. 2 (evidencing that Atlantic signed the distribution agreement on May 21, 2004 while MedSpring signed on July 6, 2004), with Def.'s Mem. in Supp. of Mot. to Quash Service of Process, or Dismiss for Lack of Personal Jurisdiction, or Transfer Venue to So. Dist. of Fla., Ex. C [hereinafter Atlantic's Memo] (evidencing that Atlantic signed the distribution agreement on July 1, 2004 while MedSpring signed on July 14, 2004)).  Despite this fact, it appears that MedSpring signed the distribution agreement no sooner than eleven days after Mr. Mendiola's visit to Utah. The delay in MedSpring's signing lends credence to the proposition that Mr. Mendiola's visit to Utah served as the impetus for the consummation of the agreement.

Under the terms of the signed agreement, Atlantic agreed to place orders with MedSpring at its Utah office and MedSpring agreed to fill those orders by delivering hemostatic gauze FOB Salt Lake City, Utah.  (Knight Decl. ¶ 13.)  Atlantic agreed to forward payments to MedSpring in Utah.  (Id.)  The term of the relationship was set at five years.  (Id.)  Additionally, the parties agreed that Utah law would govern the interpretation and enforcement of the agreement's terms. (Atlantic's Memo, Ex. C, attached to Ex. 1 ¶ 10.2.)

The parties performed under the terms of the agreement from July 2004 to March 2005. (Knight Decl. ¶ 15.)  But questions concerning MedSpring's exclusive rights to the hemostatic gauze arose and relations between MedSpring and Atlantic quickly soured.  (See id. ¶ 15, Atlantic's Memo, Ex. 2 at 6-7.)  Atlantic refused to submit any additional orders to MedSpring. (Knight Decl. ¶ 15.)

On August 1, 2005, counsel for Atlantic sent a letter to MedSpring's counsel, stating that Atlantic would "file an action in the U.S. District Court for the Southern District of Florida" if the parties could not reach a mutually acceptable resolution to their dispute.  (Atlantic's Memo,

Ex. 3.)  One week later, MedSpring filed suit against Atlantic in Utah.  (See Compl.)  Despite

filing that suit, MedSpring continued to discuss the possibility of a resolution that did not

necessitate litigation.  MedSpring's counsel informed Atlantic of the suit in a letter dated

September 9, 2005, stating that the complaint "was prepared prior to my first discussion with you

because of your threat to bring suit in Florida under the laws of the State of Florida contrary to

the Distribution Agreement."  (Atlantic's Memo, Ex. 4 at 2.)  Also on September 9, 2005,

Atlantic filed suit against MedSpring in the U.S. District Court for the Southern District of

Florida.  (Id. Ex. 2.)  On September 19, 2005, Atlantic removed MedSpring's action to this court,

(Notice of Removal) and now requests a transfer or dismissal of the suit.

## ANALYSIS

Atlantic argues that this court should give primacy to the Florida suit under the "first to

file" doctrine and transfer this action to Florida.  In the alternative, Atlantic argues that this

matter should either be dismissed because Atlantic's contacts with Utah are insufficient to grant

this court personal jurisdiction over Atlantic.  The court declines to consider the Florida action

the primary action and concludes that exercising personal jurisdiction over Atlantic will not

violate the Due Process Clause of the United States Constitution.

## I.  First to File

Even though MedSpring was the first to file suit, Atlantic contends that the "first to file"

rule actually supports a transfer of this matter to Florida.  Atlantic argues that the first-to-file rule

should not be applied here because (1) MedSpring's suit was filed in a race to the courthouse

after Atlantic threatened suit, (2) it is questionable whether Utah can assert personal jurisdiction

over Atlantic, and (3) the Florida action is procedurally further along than the Utah action.  The

court disagrees and declines to consider the Florida action the primary suit.

**A.  MedSpring's Complaint is not an improper anticipatory filing.**

The first-to-file rule is a general case management principle that is not codified by statute or procedural rule.  The rule has its genesis in principles of comity, and essentially counsels that federal courts should decline to hear a case if a previously filed case involving nearly identical parties and issues is being pursued in another federal court.  See Nat'l Equipment Rental, Ltd. v. Fowler, 287 F.2d 43, 45 (2d Cir. 1961) ("Sound judicial discretion dictates that the second court decline its consideration of the action before it until the prior action before the first court is terminated."); accord Cessna Aircraft Co. v. Brown, 348 F.2d 689, 692 (10th Cir. 1965).  "When a state action is removed to federal court, for first-to-file purposes, the state court filing date is the date used."  Affinity Memory & Micro, Inc. v. K & Q Enterprises, Inc., 20 F. Supp. 2d 948, 954 n.10 (E.D. Virginia 1998) (citing 800-Flowers v. Intercontinental Florist, Inc., 860 F. Supp. 128, 131 (S.D.N.Y. 1994)).  "Case law indicates that the court in which the first-filed case was brought decides the question of whether or not the first-filed rule, or alternatively, an exception to the first-filed rule, applies."  Ontel Prod., Inc. v. Project Strategies Corp., 899 F. Supp. 1144, 1150 n.9 (S.D.N.Y. 1995).  While the first-to-file rule is serves both judicial comity and efficiency concerns, it should not be applied mechanically.  See Affinity, 20 F. Supp. 2d at 954. District courts are afforded discretion when deciding whether the first-to-file rule or an exception to that rule applies to the case at hand.  See Columbia Pictures Indus., Inc. v. Schneider, 435 F. Supp. 742, 747 (S.D.N.Y. 1977) (the issue of whether to apply the first-to-file rule "is committed to the sound discretion of the district court") (internal quotation omitted).

Atlantic argues that application of the first-to-file rule is inappropriate here because MedSpring only filed suit in Utah in anticipation that Atlantic would file in Florida.  There is case law supporting an anticipatory suit exception to the first-to-file rule.  See, e.g., Guthy-

Renker Fitness L.L.C. v. Icon Health & Fitness, Inc., 179 F.R.D. 264, 271 (C.D. Cal. 1998)
(implying that first-to-file rule does not carry the same force in situations when the first-filed suit
is deemed anticipatory because the first-to-file rule should not encourage a "race to the
courthouse door in an attempt to preempt a later suit in another forum"); Ontel, 899 F. Supp. at
1150 ("[O]ne exception [to the first-to-file rule] exists where the first-filed suit constitutes an
improper anticipatory filing . . . .") (internal quotation omitted).  "A filing in this context is
improper where it attempts to exploit the first-filed rule by securing a venue that differs from the
one that the filer's adversary would be expected to choose."  Ontel, 899 F. Supp. at 1150.

Atlantic contends that MedSpring only filed suit in Utah after receiving a letter from
Atlantic's counsel intimating that Atlantic would file suit in Florida if the parties failed to reach
an acceptable settlement agreement.  Indeed, a letter from MedSpring's counsel to Atlantic's
counsel does state that its complaint "was prepared . . . because of your threat to bring suit in
Florida under the laws of the State of Florida contrary to the Distribution Agreement."
(Atlantic's Memo, Ex. 4 at 2.)  But adopting the position urged by Atlantic without an
examination of the complete context in which the Utah suit was filed would simply turn the first-
to-file rule into the first-to-threaten rule.  Cf. Ontel, 899 F. Supp. at 1151 ("This is not to say that
whichever party first expresses its desire to resolve an alleged claim outside of the courtroom
should always benefit from the first-filed rule; that would simply change the proverbial 'race to
the courthouse' into the race to the post office, facsimile machine, or telephone . . . .").

Turning to the facts at hand, the court initially notes that MedSpring did not file a
declaratory action.  As the court in Ontel pointed out, improper anticipatory filings, "by
necessity, often take the form of declaratory judgments."  Id.  A declaratory suit is immediately
suspect as an improper anticipatory filing because a declaratory action, generally speaking, is

essentially the prosecution of an affirmative defense.  While certainly not determinative, the fact that MedSpring seeks to prosecute facially legitimate claims, whether meritorious or not, against Atlantic weighs against the conclusion that its complaint was an improper anticipatory filing.

Further, it is less than certain that Atlantic delayed filing the Florida action in a good faith attempt to pursue settlement negotiations.  As Atlantic correctly notes, the anticipatory filing exception to the first-to-file rule is used to protect "those parties who were prepared, and had every intention, to pursue foreseeable legal action but failed to bring suit first due <u>solely</u> to their attempt to settle the matter without court involvement." <u>Id.</u> (emphasis added).  The exception, in other words, does not operate to protect parties "who refrained from suing due to any, or any combination, of the myriad of other factors that deter lawsuits, such as legal fees, costs, process server expenses, the hope to avoid 'raising the stakes' in the dispute, the desire not to appear unnecessarily litigious, and the uncertainty of the strength of one's claim." <u>Id.</u>

Atlantic did state in its correspondence with MedSpring that it wished to resolve the parties' conflict without resorting to litigation.  But that statement alone fails to persuade the court that Atlantic postponed filing its complaint solely out of a desire to pursue settlement.  If, for example, Atlantic had attached a draft complaint to its correspondence, its argument would be more compelling.  <u>See id.</u> at 1151 n.11 ("Parties that employ the common settlement technique of providing an adversary with a drafted, but unfiled, complaint would clearly fall within" the category of parties the anticipatory filing exception is designed to protect.).  As the record now stands, the court is not convinced that Atlantic delayed filing suit only to pursue settlement discussions.  Considering all the circumstances of this case, the court declines to impose the anticipatory-filing exception to the first-to-file rule.

**B.  This court can constitutionally assert personal jurisdiction over Atlantic.**

Atlantic asserts that Utah's assertion of personal jurisdiction in this matter is dubious at best and that a suspension of the first-to-file rule is therefore warranted.  However, as more fully discussed below, the court concludes that it can properly exercise personal jurisdiction over Atlantic.  As a result, Atlantic's contention that the uncertainty of personal jurisdiction counsels in favor of suspending the operation of the first-to-file rule must be rejected.  In reaching this conclusion, the court makes no comment on the appropriateness of considering the existence of questionable jurisdiction when deciding whether the first-to-file rule should apply to a given situation.

**C.  The Florida suit has not progressed to such a point that a transfer is warranted.**

The final point Atlantic raises in support of its contention that the first-to-file rule should not operate here is that the Florida suit, despite being the second action filed, is actually procedurally further along than this suit.  The parties have entered into a joint scheduling report in the Florida action that sets benchmark dates to pace the smooth progression of the action.  But the court concludes that the Florida action has not progressed to such a point that a transfer is warranted.

At the hearing on this matter, MedSpring's counsel stated that it has filed a motion to transfer or dismiss the Florida action, and has additionally requested a stay of all discovery pending the outcome of that motion.  MedSpring's motion to dismiss or transfer has been fully briefed and under the advisement of the Florida court for approximately two months now.  In short, the status of the Florida action is in some doubt and it is far from certain whether the Florida suit will progress at all let alone at a rate quicker than that afforded the litigants before this court.  While the court acknowledges that the Florida action has progressed at somewhat

quicker pace than the present action, the court concludes that the difference in procedural status is not significant enough to warrant suspension of the first-to-file rule.

## II.  This Court Can Properly Exercise Personal Jurisdiction over Atlantic

Atlantic argues that even if an exception to the first-to-file does not apply, this action should nevertheless be dismissed for lack of personal jurisdiction.  The court concludes that Atlantic's contacts with Utah are substantial enough that exercising personal jurisdiction will not violate due process.

"To obtain personal jurisdiction over a nonresident defendant in a diversity action, a plaintiff must show both that jurisdiction is proper under the laws of the forum state and that the exercise of jurisdiction would not offend due process."  Intercon, Inc. v. Bell Atlantic Internet Solutions, Inc., 205 F.3d 1244, 1247 (10th Cir. 2000).  The Tenth Circuit has noted that "[a]lthough plaintiff bears the burden of establishing personal jurisdiction over defendant, in the preliminary stages of litigation, this burden is light."  Id.  Because the subject matter of this suit is related to Atlantic's contacts with this state, it is necessary to determine whether this court can permissibly assert specific, rather than general, personal jurisdiction over Atlantic.  See Trierweiler v. Croxton & Trench Holding Corp., 90 F.3d 1523, 1532-33 (10th Cir. 1996) (stating that general jurisdiction lies only when a defendant's contacts with a state are "continuous and systematic," such that it is not unfair for the state to exercise personal jurisdiction over the defendant even if the suit is unrelated to the defendant's contacts with the forum state).  The appropriate course of inquiry to follow when determining whether Utah law supports the exercise of specific personal jurisdiction is well established:

> The evaluation of specific jurisdiction in Utah mandates a three-party inquiry: (1)
> the defendant's acts or contacts must implicate Utah under the Utah long-arm
> statute; (2) a "nexus" must exist between the plaintiff's claims and the defendant's
> acts or contacts; and (3) application of the Utah long-arm statute must satisfy the

requirements of federal due process.

Soma Med. Int'l v. Std. Chtd. Bank, 196 F.3d 1292, 1297 (10th Cir. 1999) (internal quotation omitted).

Atlantic confines its attack on this court's personal jurisdiction to federal due process grounds. The Due Process Clause of the Fourteenth Amendment precludes a Utah court from exercising personal jurisdiction over a defendant if (1) the "defendant could not reasonably anticipate being haled into court in Utah and has not purposefully availed itself of the benefits and protections of Utah," or (2) "the assertion of jurisdiction would not comport with fair play and substantial justice." STV Int'l Marketing v. Cannondale Corp., 750 F. Supp. 1070, 1078 (D. Utah 1990).

Given the course of the parties' business negotiations and the terms of the agreement ultimately executed, the court concludes that Atlantic "purposefully availed itself of the benefits and protections of Utah," id. Atlantic initiated contact with MedSpring by contacting the company by telephone and expressing interest in entering into a distributorship agreement. A representative of Atlantic, Mr. Mendiola, then traveled to Utah in an effort to solidify relations with an eye toward a consummation of the distributorship agreement. When Atlantic ultimately signed the distribution agreement, it committed itself to a multi-year relationship with Utah. Atlantic agreed to place orders in Utah for hemostatic gauze, to deliver payment to Utah for that gauze, and to accept responsibility for the gauze once it reached Salt Lake City, Utah. Additionally, the parties agreed that the distributorship agreement would be governed by Utah law.

Viewed in their totality, the facts of this case indicate that Atlantic purposefully established substantial contacts with Utah. By taking those steps, Atlantic was on notice that any

potential conflict between the parties arising from their business dealings might end up in front of a Utah tribunal.  See Pro Axess, Inc. v. Orlux Dist., Inc., 428 F.3d 1270, 1277-78 (10th Cir. 2005) (holding that totality of facts supported finding of purposeful availment when a French corporation contacted a Utah corporation and entered into a contract with that corporation, services were performed in Utah, and the parties exchanged "numerous faxes, letters, and phone calls.");  Cf. SII Megadiamond, Inc. v. Am. Superabrasives Corp., 969 P.2d 430, 435-36 (Utah 1996) ("Any nonresident business that confirms that it intends to act as a national and international distributor for a Utah business and then places hundreds of purchase orders for goods that are to be shipped and invoiced from Utah, with full knowledge that it must perform its part of the bargain by paying for the goods in Utah[,] should not be surprised when it gates haled into court after it fails to pay no fewer than 170 invoices." (internal quotation omitted)).

But even if a defendant's actions satisfy the minimum contacts test, a court must still consider whether "the exercise of personal jurisdiction over defendant would offend traditional notions of 'fair play and substantial justice.'"  Intercon, 205 F.3d at 1247 (internal citations omitted).  The Tenth Circuit has identified the following five factors to consider when determining whether notions of fair play and substantial justice will be offended by the exercise of personal jurisdiction:

> (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversies, and (5) the shared interest of the several states in furthering fundamental social policies.

Pro Axess, 428 F.3d at 1279-80 (internal quotation omitted).  "[W]here a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render

jurisdiction unreasonable." <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 477 (1985).

Atlantic has presented no persuasive evidence or argument to indicate that notions of fair play would be violated by allowing MedSpring to pursue its claims in Utah. The record indicates that Atlantic engages in both interstate and international business. "In undertaking interstate business [a defendant] must recognize and accommodate . . . the probability and necessity of litigating in foreign forums." <u>SII Megadiamond</u>, 969 P.2d at 436 (internal quotation omitted). Further, MedSpring's complaint requests damages in the amount of $356,250.00. (Compl. at 3.) "Where the amount in controversy . . . is substantive compared to the costs of litigating the action, there is only minimal possibility of defendants defaulting on the basis that they cannot afford to litigate in the forum." <u>SII Megadiamond</u>, 969 P.2d at 436 (internal quotation omitted).

Further, "[s]tates have an important interest in providing a forum in which their residents can seek redress for injuries caused by out-of-state actors. The state's interest is also implicated where resolution of the dispute requires a general application of the forum state's laws." <u>Pro Axess</u>, 428 F.3d at 1280 (internal quotation and citation omitted).

The court concludes that consideration of the first two factors identified in <u>Pro Axess</u> lend support to the conclusion that allowing MedSpring to prosecute its claims in Utah will not violate notions of fair play and substantial justice. The additional <u>Pro Axess</u> factors either minimally support this forum's retention of this matter or do not materially favor one party more than another.[2] But when all five factors are considered, the court is convinced that notions of fair

_____

[2]The record indicates that a slightly larger number of likely witnesses may reside in Utah than in Florida. Also, under the terms of the distributorship agreement, Utah law apparently governs this case. Both of those factors indicate that Utah may serve as the more efficient forum, but the court is aware that Florida courts are more than capable of construing and applying Utah law. As a result, those factors only slightly weigh in favor of allowing this action to continue in Utah.

play and substantial justice will not be offended by exercising personal jurisdiction over Atlantic.

## CONCLUSION AND ORDER

The court declines to suspend operation of the first-to-file rule or otherwise consider the Florida action as the primary suit.  Further, the court concludes that it may properly exercise personal jurisdiction over Atlantic.  For all the foregoing reasons, Defendant's Motion to Quash Service of Process, or Dismiss for Lack of Personal Jurisdiction, or Transfer Venue to the Southern District of Florida is DENIED.


SO ORDERED this 6th day of March, 2006.


BY THE COURT:


TENA CAMPBELL
United States District Judge

14